BIONDOLILLO v. ERIE R. CO.

(Supreme Court, Appellate Division, Fourth Department. April 30, 1913.)

Appeal from Trial Term, Livingston County.

Action by Peter Biondolillo against the Erie Railroad Company. From a judgment of nonsuit and an order denying plaintiff's notice for new trial, he appeals. Affirmed.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

P. Chamberlain, of Rochester (Chamberlain & Page, of Rochester, of counsel), for appellant.

J. S. Phillips, of Hornell (Robbins, Brown & Phillips, of Hornell, of counsel), for respondent.

PER CURIAM. Judgment and order affirmed, with costs.

McLENNAN, P. J. (dissenting). This is an appeal from a judgment of nonsuit entered in the office of the clerk of Livingston county on the 16th day of October, 1912, with costs, upon the decision of the court rendered at the close of the plaintiff's evidence at a Trial Term of the Supreme Court held in and for said county; also from an order denying plaintiff's motion for a new trial, made upon the minutes of the court. The action was commenced on the 8th day of January, 1912, to recover damages sustained by the plaintiff while in defendant's employ, alleged to have been caused solely through the negligence of the defendant.

Many of the important facts are not in dispute. On the 8th day of August, 1911, the plaintiff was in the employ of the defendant, and was engaged in working in connection with a steam shovel in defendant's gravel pit two miles west of the village of Avon. The defendant was engaged in taking out gravel from such pit. The work train consisted of six cars, besides the engine and tender. The gravel was being distributed to various parts of the defendant's road. One William Murphy was the conductor of the gravel train, and it appears without contradiction that he was the superintendent upon this work. Plaintiff had been working at this pit for about a month, but had nothing to do with reference to the operation of such gravel train. This work train, when backed into the gravel pit, was loaded by means of a steam shovel upon which plaintiff was employed. There was an engineer and brakeman also upon this train. On the day in question the engine was facing east towards Avon, and the rear of the train

was in the gravel pit. The conductor and superintendent, Murphy, called to the plaintiff and said:

"Come here quick; we have got to take this boulder off the track."

And it appears that a heavy stone or boulder had fallen from the steam shovel and was in the middle of the track, about two to five feet to the rear of the rear car of the train. The plaintiff, with others, came to assist in moving off the boulder by direction of the superintendent. Murphy, the conductor and superintendent, also helped move it. The evidence tends to show that the train was standing still, that the plaintiff got upon the track in obedience to the orders of the superintendent, and asked the conductor and superintendent if the train was going to back up, and the conductor said, "No; it is stopped." As the plaintiff and his colaborers began to roll the boulder off the track, the train backed up, struck the plaintiff, whose back was to the rear car, and knocked him down, ran over his right leg, and cut it off. It is alleged that he was also otherwise injured.

So that we have, without going into the details of the evidence, the proposition that the plaintiff was called by the conductor, in this case the vice principal of the defendant, to get behind a standing car to help remove an obstruction on the track, and, concededly without any fault on plaintiff's part, the injury resulted. The plaintiff, it will be borne in mind, was not a member of the crew of the train. He was there simply as an employé of the defendant in assisting to remove gravel from its pit. The conductor, who, as we think, acted as vice principal of the defendant, directed the plaintiff to go into this place of danger to work, and while obeying the instructions of the conductor in attempting to remove the boulder from the track, the train suddenly backed up without warning, and he sustained the injuries for which he complains.

The complaint alleged as a ground of negligence that the conductor, the vice principal of the defendant, gave the order to the engineer, either directly or indirectly, to move the train backward at the time when the injury to the plaintiff resulted. The evidence clearly tends to show that the conductor did not give such signal or order to have the train moved. But, in addition, the complaint alleges:

"That the defendant was negligent in failing to furnish plaintiff with a suitable and proper place to work and suitable and proper ways and works, and was negligent in its failure to adopt and promulgate rules and regulations for the operation of the said train and cars upon the tracks at said gravel pit, and in the construction of said tracks for the safety of the plaintiff and its other employés."

While, as we have seen, the evidence fails to show that the conductor gave the signal to the engineer which caused the train to back up, and which struck the plaintiff, we think, still, the evidence made defendant's negligence a question of fact, because the conductor, who was a vice principal, and who had absolute charge of the train, did not take any precautions to see to it that such train was not backed upon the plaintiff at the point where he was ordered to work; and where it would be impossible for him to take notice of the movement of the train.

I conclude that it was clearly a question of fact for the jury as to whether or not the conductor, who had absolute charge of the train, when he ordered the plaintiff in this place of danger, was not required to use ordinary care and prudence in seeing to it that the train did not back upon the plaintiff, and as to whether or not he could absolve himself from such duty of superintendence by joining the plaintiff in attempting to remove the boulder in question. When the conductor ordered this plaintiff to work in this place of danger, it would have been only ordinary care and prudence to have notified the engineer not to move the train backwards, or to notify the brakeman that he must give no signal to the engineer which would indicate that it was safe to move such train, or to himself stand on guard to see to it that the train was not moved, except by his authority.

The real facts are simple, and really not in dispute. The conductor, the vice principal of the defendant, had charge of the train and the manner of doing the work in question. A boulder fell upon the track immediately behind the last car of such train, and he, the conductor, called upon the plaintiff and others to get in behind such car and attempt to remove such boulder from the track, without taking any precaution to see to it that the train was not backed up and run over such employés. Under all the circumstances, it seems to me that, notwithstanding the plaintiff failed to prove that the conductor, the vice principal of the defendant, gave the order to back up, still the defendant was guilty of negligence, because the conductor, its vice principal, failed to see to it that such instructions were given as would have prevented this accident.

I conclude that it was clearly a question of fact for the jury as to whether or not the defendant was guilty of actionable negligence. There is no question involved as to contributory negligence.

I therefore conclude that the judgment and order appealed from should be reversed, and a new trial granted, with costs to appellant to abide event.

KRUSE, J., concurs in this dissent.